## LEA M. SHIELDS V. JOHN H. GIBSON (TREAS.).

TITLE BY DEVISE DOES NOT PREVENT CORRECTION OF ERROR IN TAXATION.

Title passing by devise is not such a change of ownership as to prevent a correction of errors by the auditor under Sec. 2803 Rev. Stat.

**W. M. Ampt,** for plaintiff, cited:

1. Where an annual assessor returns a new structure and.accurately describes the lot upon which it is erected, it is the county auditor's duty to charge up the valuation thereof to the tax valuation of such lot. Secs. 2753, 2801 Rev. Stat.

2. If the assessor described the wrong lot the auditor cannot transfer the value of the house to the lot on which the house was erected as a correction of his duplicate under Sec. 1038 Rev. Stat. This section only permits the correction of errors which appear upon the face of the auditor's duplicate. Had the assessor returned the house on the correct lot, but the auditor charged it on a wrong lot, then he had the power to transfer the value to the lot as returned by the assessor. Secs. 1038, 2800 Rev. Stat.

3. An error of the assessor as above described could be corrected by the board of equalization fixing a value thereon under Sec. 2804 Rev.

Stat., or by the county auditor under Sec. 2802 Rev. Stat., upon due notice to the owner. The board took no action and the auditor fixed no value by his own action or that of an assessor, but transferred the assessor's valuation of 1895 and that without any attempted notice except a letter to the then deceased owner—the mother of the plaintiff. In fixing a value the auditor must pursue the rules prescribed by statute for valuing real property, that is an actual view, or the action of an assessor then in office. Secs. 1448, 2790, 2793, 2802 Rev. Stat.

4. The house was an old one bought from another and removed from the lot on which it had been erected to the lot upon which the assessor sought to change it. Its tax valuation on the lot from which it had been removed as fixed at the decennial equalization of 1900 was $1,750. Therefore, if the auditor had the right to omit to assess a valuation therefor, he should have charged up $1,750 instead of $3,500.

5. The plaintiff became the owner of the property by devise from her mother, who died August 9, 1900. The auditor made the addition and charged up back taxes on December 13, 1900, nearly four months thereafter. The acquisition of the property by will was within the meaning of Sec. 1025 Rev. Stat., a change of ownership, and back taxes for a period previous to such change could not be charged up against the new owner. Lohaus v. Haggerty, 4 Circ. Dec. 657 (7 R. 408) ; Neave Bldg. Co. v. Brooks, 6 Circ. Dec. 280 (9 R. 151, 159). *Contra,* Scott v. Raine, 11 Re. 171 (25 Bull. 154).

The statutes require property to be charged to the owner thereof. Secs. 1034, 2789, 2793, 2800 Rev. Stat. And Sec. 1025 Rev. Stat. specifically provides how changes of ownership shall be noted on the tax duplicate and makes no distinction between ownership arising by devise or even descent and that arising from a deed of conveyance. For this reason plaintiff claims that even if the value of the house was properly ascertained by the auditor no tax could be charged for any period anterior to August 9, 1900, when by the death of Margaret A. Shields the property descended by will to the plaintiff, Lea M. Shields.

Wilson, Cosgrave & Jones, contra.

JELKE, J.

The facts of this case are presented by findings made by the court below, and are as follows:

"1. In 1894, Margaret A. Shields owned two lots in different subdivisions in the twenty-eighth ward of Cincinnati, Hamilton county, Ohio, about one mile apart, described as follows:

" 'Lot 21-25 feet McMillan's of four-acre tract.

" 'Pt. lot 21, McMillan's of eighty-acre tract.'

"2. In 1894 or 1895, she bought an old house from Benjamin Evans, which was then valued on Evans' property for taxation at $1,750, as distinct from the lot on which it stood, and moved it upon lot 21 of McMillan's four-acre tract, erecting it there upon a new cellar and foundation and built a basement story under it, and converted it into an apartment house.

"3. In 1895 the annual assessor of the twenty-eighth ward of Cincinnati, having examined said house and appraised the same at $3,500, made an official report as to new structures in that ward to the county auditor, under the provisions of Sec. 2753 Rev. Stat., in the following words:

" 'In the twenty-eighth ward the following is a correct report of the kind of structure, and the value of which, in my opinion, has been added to the lots or tract of land by the erection thereof, on the day preceding the second Monday of April, 1895.

" 'Where the building was reported in a previous year as unfinished, the amount here returned as total value and the amount then returned is deducted. Where an old building has been removed in whole or in part from the ground now occupied by a new structure, the part so removed has been by me deducted in making the assessment, and the difference is the amount here reported.

" ' Daniel Koch, Assessor,
" ' 416 Shillito Street.
" 'May 6, 1895.

* * * * * * * *

Shields, Margaret A., pt. 21 McMillan of eighty-acre tract, three-story frame, total value of new structure, $3,500, amount to be added to 1895 duplicate for new structure, $3,500. Finished.'

"Which entry was intended to apply to said house, and said addition was intended to be made to the lot on which said house was situated.

"4. The board of supervisors, sitting as an annual board of equalization, considered the report of all the annual assessors, and examined each and every piece of property where changes had been made, and made no change in the valuation as so reported by the said assessor of the twenty-eighth ward, but allowed their action, being as shown on page 206 of their minutes, a transcript of which is attached hereto, marked 'A.'

"5. The county auditor entered the $3,500 as an addition to the tax valuation as reported by the assessor against the property standing in the name of Margaret A. Shields on duplicate as pt. 21 McMillan's eighty-acre tract.

"6. Margaret A. Shields died August 9, 1900, leaving a will which was probated August 24, 1900, under which Lea M. Shields was appointed executrix and qualified as such, which will directed the payment of all just debts, and devised one-half of the residue of her estate, real and personal, to her daughter, Lea, plaintiff herein, and one-fourth to her daughter, Mary, and one-eighth to her son, William, and one-eighth to her son, Lawrence Shields. On March 21, 1901, petition was filed in case No. 6482, probate court Hamilton county, Ohio, by Lea Shields as executrix of the estate of Margaret A. Shields, deceased, against said Lea M. Shields, Mary C. Shields, Lawrence Shields and William A. Shields and his wife, and Alexander M. Shields and his wife, to sell the real estate described in the petition to pay the debts of said Margaret A. Shields, deceased. And proceedings were had thereunder, whereby said premises were sold for $3,600 to Moses Goldsmith at private sale of June 22, 1901, and said sale was approved and confirmed by the court, June 24, 1901, and said executrix ordered to execute a deed therefor, which deed was duly executed, June 24, 1901, and recorded June 25, 1901, in Deed Book 862, page 213. On distribution of proceeds of said sale no order was made by said court for any payment of taxes out of same. County treasurer was not a party to said cause.

"On April 17, 1901, Mary C. Shields and Lawrence Shields brother and sister of said Lea M. Shields, both unmarried, executed a quitclaim deed to said Lea M. Shields of their interest in the real estate described in the petition, as did William A. Shields and wife, which deeds were recorded June 25, 1901, in Deed Book 860, page 502, and Deed Book 861, page 311, respectively.

"And on June 24, 1901, said Lea M. Shields individually executed a quitclaim deed to Moses Goldsmith in consideration of $1.00 and other considerations of said real estate described in the petition, in which was contained the following condition:

" 'But this conveyance is hereby made subject to a vendor's lien in favor of said grantor herein for the sum of $506.63 (five hundred and six and 63-100 dollars), which said amount has been retained out of the purchase-money by said grantee for the payment of certain taxes added by the auditor of Hamilton county, Ohio, being $461.16 back taxes and $45.47 taxes added payable in December, 1900, the legality of which said additions is by said grantor disputed, and said grantor agrees with said grantee that she will at once institute proceedings in court to test the legality of said additions and to remove them from the property herein described either in whole or in part and to prosecute proceedings with due diligence, and said grantee agrees to pay said amount in his

hands to said grantor whenever said tax lien is removed from said title by payment or otherwise.'

"7. J. D. Parker having bought from Margaret A. Shields the real estate described as part of lot 21 of eighty-acre tract, on January 14, 1898, redeemed said property from the forfeited list by paying the delinquent taxes, including the taxes charged on the $3,500, and on November 5, 1900, made claim for a refunder of taxes on the excess valuation of $3,500, as said lot so redeemed was a vacant lot and said charge had been erroneously made upon said part lot 21 of McMillan's eighty-acre tract, when it should have been charged against lot 21 McMillan's four-acre tract. The auditor having investigated said claim, a refunder was allowed on November 17, 1900, for $461.16, and on November 23, 1900, a remit given for taxes on said $3,500 excess for the then current year, amounting to $90.92, making in all $552.08. Shortly afterwards, the auditor, not knowing that Margaret A. Shields was dead, directed a letter to her notifying her to appear to show cause why an addition should not be made to the tax valuation of lot 21, McMillan's four-acre tract, of the $3,500 valuation for the omitted building upon said lot which had been erroneously charged to the lot sold to said Parker. And on or about December 13, 1900, not hearing from Margaret A. Shields, and the letter mailed to her address not having been returned, although it had his return card upon the envelope, the auditor made said addition and charged up the taxes for said omitted building against said lot 21 of McMillan's four-acre tract, which had been theretofore charged on pt. lot 21 of McMillan's eighty-acre tract, in the following entry upon the subsequent additions on the tax duplicate for the year 1900, then in the hands of the auditor and treasurer.

" 'Shields, Margaret A., lot 21-25 feet McMillan's of four-acre tract, house, $3,500; taxes due December 20, 1900, $45.465; taxes due June 20, 1901, $45.465; $461.16. Add to regular taxes 1895, 1896, 1897, 1898 and 1899. No Pen.

" 'Was erroneously charged to J. D. Parker.' "

Section 2803 Rev. Stat. provides:

"In all cases where any county auditor shall discover, or have his attention called to the fact, that any assessor in any previous year shall have omitted to return, or shall in any future year 'omit to return any lands, town lots, or any improvements, structures or fixtures thereon, subject to taxation, situated within his county, or if any such property has escaped taxation by reason of any error of said auditor, it shall be the duty of said auditor to ascertain the value thereof for taxation, as near as may be, and to enter said lands, town lots or improvements,

upon the duplicate of the county, then in the hands of the county treasurer of such county, and to add to the taxes of the current year the simple taxes of each and every preceding year in which such property shall have escaped taxation, as far back as the next preceding decennial appraisement and equalization of real estate in his county, unless in the meantime such property shall have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be added, or the owner of such property may, if he desires, pay the amount of such taxes into the county treasury, on the order of said auditor."

Under this provision of the statutes the auditor of the county was authorized to enter upon the duplicate of the county the improvement erroneously charged to another lot, unless title by devise is such a change of ownership as is contemplated in such section of the statutes.

Counsel for plaintiff relies upon the case of Lohaus v. Haggerty, 4 Circ. Dec. 657 (7 R. 408), and on the strength of this case the court below decided against the county. In that case a tax sale was held to be within the provisions of Sec. 2803 Rev. Stat., so as to prevent the "Dow tax," which had erroneously been charged to another lot, from subsequently being charged against the lot sold.

There are two points of essential difference between that case and the case at bar: First, money had been expended by the tax purchaser upon the faith of the duplicate; and second, the "Dow tax" is a special tax in no way based upon the valuation of the property and there would be nothing on the records in regard thereto to put a purchaser on notice.

In the case of Scott v. Raine, 11 Re. 171 (25 Bull. 154), in the superior court of Cincinnati, Judge Hunt, on page 188, said:

"The term 'owner' in Secs. 1040 and 2803 cannot be enlarged more than to include such a *bona fide* purchaser of the property as estops the state from the assertion of a claim against the property for taxes which at the time of the purchase were not on the duplicate and of which the purchaser could not be advised. There can be no good reason why the heirs of a decedent or the devisees of a testator, or the donee by deed of gift, or the lessee for a term of years should be exempted from the taxes legally due upon the land which but for this change of ownership the state would have been able to collect. They have not parted with anything of value on the faith of the condition of the duplicate, which is the very reason of the law itself. No such construction can be permitted. It would seem that the decision in Davis v. Cincinnati, 36 Ohio St. 24, is conclusive as to what the term 'owner' means, in so far as taxes and assessments are concerned, and assuming that Davis was the owner of a lease for a term of years with all the obligations to pay taxes and assess-

ments as between him and the lessee, nevertheless the term 'owner' in the statute referring to assessments—and certainly by fair implication referring to taxes—means owner in fee. Change of ownership therefore means a change in ownership in fee, by a *bona fide* purchase, in order to estop the state under Secs. 1040 and 2803 from the collection of taxes, which but for those sections would otherwise be collected."

We think this is sound and applicable to this case.

The case of Neave Building Co. v. Brooks, 6 Circ. Dec. 280 (9 R. 151), is a case of change of ownership for value, and that this was of importance in the minds of the court is shown on page 153:

"The six grantors in said deed owned and held shares in the capital stock of said corporation, some in proportion and some in excess of their respective interests in the lot at the time of the conveyance. Said trustees, as such, did not at any time hold or own any shares of said stock. Persons other than those named, who never had any interest in any of said land, held and owned shares of said stock from the organization of the corporation up to this time."

The Supreme Court said in case of Markle v. Newton, 64 Ohio St. 493:

"The duplicate would have the effect of notice by public record, and a person thereafter acquiring the property could not claim the protection of a *bona fide* purchaser. What the rights of a purchaser may be, against the state, must depend upon the facts of his case."

In our opinion the purpose of this provision is to protect a *bona fide* purchaser who might rely on the duplicate as it appeared at the time of his purchase.

The devisee has parted with nothing upon the faith of the record, but has become the owner of the lot by devise, subject to the payment of the debts of the testator, and the omitted taxes are in the nature of a debt entitled to a specific lien.

Petition dismissed.